IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD DRAUGHON,

                Plaintiff,

v.                                                                    Case No. 14-2264-JAR-GLR

UNITED STATES OF AMERICA, et al.,

                Defendant.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR TRANSFER OF VENUE

The United States of America moves on behalf of itself and its agencies named in this lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6) to dismiss the Complaint or, in the alternative, to transfer venue to the United States District Court for the Western District of Missouri. Under the Federal Tort Claims Act ("FTCA"), the sole permissible Defendant is the United States of America, and all other named Defendants should be dismissed. Under the FTCA, state law determines the liability of the United States, and Kansas law applies. Under Kansas law, Plaintiff was not a proper claimant to present a claim to the federal agency. Nor, as a *pro se* litigant, is he entitled to file claims on the behalf of others. Therefore, a proper claim has not been filed with the agency, and the United States' sovereign immunity has not been waived. Additionally, Kansas's statute of repose bars Plaintiff from pursuing this cause of action.

If Missouri law applies, Plaintiff may be an acceptable claimant. But even if this Court had subject-matter jurisdiction, a *pro se* plaintiff cannot file suit on the behalf of others, and more importantly, Plaintiff cannot file a claim solely on his own behalf, as such, dismissal of the Complaint is required. Plaintiff has also failed to state a claim upon which relief can be granted

because the *Feres* doctrine prohibits review of some, if not all, theories of liability in the Complaint, because review of the VA's disability determinations is barred under 38 U.S.C. § 511(a), and because Plaintiff has not otherwise properly pled all the elements for his claims. Finally, if dismissal is not appropriate, and Missouri law applies, then this case should be transferred to the United States District Court for the Western District of Missouri.

## NATURE OF THE CASE

On March 18, 2010, Donald Draughon's son, William Draughon, committed suicide. On March 12, 2012, Donald Draughon filed a claim for $7 million with the United States Department of Veterans Affairs ("VA"), alleging that his son's suicide was connected to the mental health treatment[1] his son received from the VA. Donald Draughon's claim was finally denied on December 6, 2013. This suit was filed on June 5, 2014.

## FACTUAL BACKGROUND

1.     William Draughon joined the Marines in early 2001. Compl., Doc. 1 at 19. During his time in the Marines, William Draughon served in Iraq and Afghanistan. *Id.* at 20-21.

2.     William Draughon was discharged from the Marines in early 2005. *Id.* at 21-22.

3.     After his active duty service, William Draughon exhibited symptoms consistent with post-traumatic stress disorder ("PTSD"). *Id.* at 22-24.

4.     According to the Complaint, the alleged negligent provision of care related to William Draughon's mental health treatment may have started during William Draughon's active duty service in the military. *Id.* at 22-23.

---

[1] Mental health treatment refers to the types of treatment outlined in Dr. Mark I Petersen's Declaration, which is filed under seal as Exhibit A.

5.      After being discharged from the military, William Draughon allegedly received mental health treatment at three VA medical centers: Kansas City, Missouri; Topeka, Kansas; and Leavenworth, Kansas. *Id.* at 22.

6.      The Complaint, however, does not detail when William Draughon received care from the different facilities. Defendant filed an affidavit detailing the dates and locations of treatment. Declaration of Dr. Mark I. Petersen (Oct. 10, 2014) (filed under seal as Exhibit A).[2]

7.      William Draughon had primarily been treated for mental and physical health issues in Missouri until late 2009, but he last received treatment for his mental health issues from a VA program in Leavenworth Kansas from November 18, 2009 to January 6, 2010.  Exhibit A at ¶¶ 6-11.

8.      Between January 6, 2010, and his suicide, William Draughon only visited one VA provider in Missouri on March 5, 2010. *Id.* That appointment was with his primary care physician and for reasons unrelated to mental health issues. *Id.* at ¶10.

9.      William Draughon committed suicide at his home at 3911 NE 53rd Street, Kansas City, Missouri on March 18, 2010. Compl., Doc. 1 at 24-26.

10.     Donald Draughon claims his son's suicide was the result of negligent mental health treatment from the VA.

11.     William Draughon was unmarried. *Id.* at 28. He had two minor children, R.B. and D.C. *Id.* He had a biological father, Donald Draughon, and a step-mother, Laurie Draughon, but never had a relationship with his biological mother. *Id.* at 28. He also had two brothers. *Id.*

---

[2] This exhibit is admissible pursuant to Federal Rule of Evidence 1006 as a summary of voluminous records. Notably, Plaintiff was provided the underlying records, the certification of meeting the business records exception, and the summary in advance of Defendant filing this Motion to Dismiss, as Defendant represented in the Certificate of Service filed simultaneously with this Motion.

12.     An SF 95 with attachments was received by the VA on March 12, 2012. A true and correct copy of the SF 95 with attachments is attached to this Motion. Declaration of William G. Rogers at ¶7 (Oct. 8, 2014) (Exhibit B);[3] *see also* SF 95 with Attachments (attached as Exhibit 1 to Exhibit B). The name of the Claimant is "on behalf of William Draughon, Deceased" and "Donald Draughon." SF 95 (March 12, 2012) (attached as Exhibit 1 to Exhibit B). Only Donald Draughon, in his individual capacity, signed as claimant. *Id.*

13.     No separate or independent claims have been filed for the other alleged Plaintiffs, Laurie Draughon, M.D., R.D. (a/k/a R.B. or R.B.D.), D.D. (a/k/a D.C. or D.C.B.), or Jenifer Hultgren. *See* Declaration of William G. Rogers at ¶6 (Oct. 8, 2014) (attached as Exhibit B).

## QUESTIONS PRESENTED

1.     Whether any Defendant, other than the United States of America, may be named in a suit brought pursuant to the Federal Tort Claims Act?

2.     Whether Kansas's or Missouri's choice-of-law principles apply under 28 U.S.C. § 1346(b)?

3.     Whether Kansas or Missouri substantive law applies under the applicable choice-of-law principles identified in question 2?

4.     Whether the correct claimant filed a claim with the agency to affect a waiver of sovereign immunity under 28 U.S.C. § 2675(a)?

5.     Whether the applicable statute of repose bars recovery in this lawsuit?

6.     Whether a *pro se* plaintiff may file pleadings on behalf of others?

---

[3] Defense counsel has redacted the document in accordance with Fed. R. Civ. P. 5.1.  Also, the attachment to the SF 95 appears to be identical to what Plaintiff has filed as his Complaint minus the correspondence with the VA and this Court.

7.     Whether the doctrine announced in *Feres v. United States*, 349 U.S. 135 (1950), bars review of all or some of the theories of liability in Plaintiff's Complaint?

8.     Whether 38 U.S.C. § 511(a), which excludes judicial review of a VA disability decision, bars review of certain theories of liability in Plaintiff's Complaint?

9.     For any remaining theories of liability, whether Plaintiff has sufficiently pled every element of the cause of action to meet the pleading standard in Fed. R. Civ. P. 8(a)?

10.     If dismissal is inappropriate, and Missouri law applies to this lawsuit, whether, pursuant to 28 U.S.C. § 1404(a), venue should be transferred to the United States District Court for the Western District of Missouri?

## ARGUMENT AND AUTHORITIES

### I.     The United States of America is the only permissible Defendant for claims brought pursuant to the Federal Tort Claims Act.

Although the jurisdictional grounds for Plaintiff's claims are not pled, the Complaint alleges a medical malpractice action founded on state law negligence, and such a claim could only be brought pursuant to the FTCA, 28 U.S.C. § 1346(b)(1). "'[I]f a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name' . . . .'" *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1142 (10th Cir. 1999). Any other named Defendant besides the United States of America should be dismissed from this action, including the United States Department of Veterans Affairs, the Office of the Attorney General, and the United States Attorney. *See* 28 U.S.C. § 2679(b)(1).

### II.     Kansas's choice-of-law principles determine which state's law applies, and Kansas law would apply to this suit.

When the law of two different states may apply in a FTCA lawsuit, then this Court must conduct a two-step choice of law analysis. First, the Court must decide which state's law choice-

of-law principles apply under the FTCA. *Gould Electrs. Inc. v. United States*, 220 F.3d 169, 179 (3d Cir. 2000) (citing references omitted).[4] Second, the Court then must apply "that state's choice of law rules to determine which state's substantive tort law applies." *Id.* (citing references omitted). Courts often check first for a "false conflict"—that is, courts ensure that the difference in law matters—but as discussed below, whether this Court has subject-matter jurisdiction depends on which state's law applies. Moreover, as discussed below, Kansas follows the First Restatement approach to conflict of law issues, while Missouri has adopted the Second Restatement approach, *see Young v. Fulton Iron Works, Co.*, 709 S.W.2d 927, 936-37 (Mo. Ct. App. 1986). Thus, this is not a "false conflict" situation.

A.   Under the FTCA, Kansas's choice-of-law principles would decide which state's substantive law applies to this action.

Under the FTCA, the controlling law is the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Here, the Complaint alleges acts or omissions related to the VA's mental health treatment of William Draughon that allegedly led to his suicide, but the Complaint is unclear about precisely which acts or omission contributed to the alleged injury, when those acts or omissions occurred, and, especially pertinent here, where those acts or omissions allegedly occurred. The Complaint merely suggests that William Draughon received care at VA medical centers in Kansas City, Missouri; Topeka, Kansas; and Leavenworth, Kansas. (*Id.* at 22). In light of the alleged claim—suicide from negligent provision of mental health treatment—it is possible that the alleged contributing acts or omissions could have occurred in both Kansas and Missouri.

Although the Supreme Court has not directly addressed this issue, some members of the Supreme Court have recognized that, when determining which act or omission counts in deciding

---

[4]  Defense Counsel was unable to find any applicable Tenth Circuit or District of Kansas law.

which state's law applies under 28 U.S.C. § 1346(b), "'[n]either the text of the FTCA nor [prior Supreme Court case law] provides any guidance. . . . when the alleged acts or omissions occur in more than one state. Moreover, the legislative history of the FTCA sheds no light on this problem.'" *Sosa v. Alvarez-Machain*, 542 U.S. 692, 758-59, 124 S. Ct. 2739, 159 L.Ed.2d 718 (2004) (Ginsburg and Beyer, J., concurring) (quoting *Gould Electrs. Inc.*, 220 F.3d at 181). Federal courts faced with the issue have applied five different approaches[5] to resolve the issue, but the concurring opinion in *Sosa* found the most convincing approach was to apply the law of the place "'in which the last significant act or omission occurred,'" as this approach avoided basing jurisdiction on the "'completely incidental 'last contact,' while also avoiding the conjecture that [alternative] inquires often entail.'" *Id.* (quoting *Simon v. United States*, 341 F.3d 193, 202 (3d Cir. 2003)). This Court should follow the concurring opinion in *Sosa* and the Third Circuit's opinion in *Simon* since it provides a bright-line test, and avoids basing jurisdiction on arbitrary and indeterminate factors.

    As discussed in Section III, whether this Court has subject-matter jurisdiction depends on which state's law applies. Since this is a factual issue that relates directly to this Court's subject-matter jurisdiction, this Court may consider declarations and other documents to resolve the

---

[5] Those five approaches are: "(1) applying different rules to different theories of liability; (2) choosing the place of the last allegedly-wrongful act or omission; (3) determining which asserted act of wrongdoing had the most significant effect on the injury; (4) choosing the state in which the United States' physical actions could have prevented injury; and (5) determining where the 'relevant' act or omission occurred." *Simon v. United States*, 341 F.3d 193, 203 (3d Cir. 2003). The first approach would be inapplicable, since there is only one claim. The second approach would seem to point towards Kansas law, as William Draughon was last treated by the VA for mental health issues in Kansas. The third approach would also point towards Kansas law, since it was the last real opportunity the VA had to treat and act on William Draughon's condition without further action from William Draughon. The fourth approach would be indeterminate, because it is unclear what physical action the United States could have taken to avoid this injury. The fifth approach would also seem to be indeterminate, as the Complaint is less than clear about precisely which act or omission allegedly caused the injuries, but again, Kansas was the location of the VA's last provision of substantial treatment for William Draughon's mental health issues.

jurisdictional fact. *See Paper, Allied-Indus., Chem. & Energy Workers Intl. Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) ("In a factual attack such as we have here, however, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. . . . In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1). . . ." (citations omitted)).

The gist of the Complaint is that the VA could or should have done more to treat William Draughon's mental health issues and to prevent him from committing suicide. The last significant act or omission would then be the last time the VA provided significant care or treatment for William Draughon's mental health issues, since whatever occurred at that time would be critical—although perhaps not dispositive—to identifying what more the VA could or should have done to avoid the alleged injury. Defendant has attached a declaration generally detailing the dates, locations, and general type of care that William Draughon received from the VA prior to his death on March 18, 2010. The last time William Draughon received care for mental health issues from the VA was at Leavenworth, Kansas from November 18, 2009, to January 6, 2010. Declaration of Dr. Mark I. Petersen at ¶¶5-11 (filed under seal as Exhibit A).

While William Draughon saw his primary care physician in Missouri on March 5, 2010, this appointment was not related to mental health treatment. *Id.* Thus, the treatment William Draughon received from the VA at Leavenworth, Kansas from November 18, 2009, to January 6, 2010, not only represents a significant period of treatment—nearly six weeks—but it also represents the last real opportunity the VA had to evaluate William Draughon's mental health issues without further voluntary action from William Draughon. Kansas would be the place of the last significant act or omission, and, therefore, "the whole law of" Kansas would apply,

including its choice of law rules. *Harvey v. United States*, 685 F.3d 939, 946 n.2 (10th Cir. 2012) (citing *Richards v. United States*, 369 U.S. 1, 10-14, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962)).

B.   <u>Under Kansas's choice of law principles, Kansas law applies.</u>

The "general rule" in Kansas "is that the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." *Cotracom Commodity Trading Co. v. Seaboard Corp*, 189 F.R.D. 655, 666-67 (D. Kan. 1999) (citing reference omitted)). In other words, if the parties acquiesce to application of the forum's law, the Court need not address the issue. *Id.* at 666 (citing references omitted). Absent argument from Plaintiff, Defendant accepts the application of Kansas law to this action.

If, however, a choice of law is presented, given that some of the allegedly negligent conduct may have occurred and William Draughon died in Missouri, then, under Kansas law, the *lex loci delicti* doctrine would apply to resolve the choice of law issue. *Anders v. Commerce Const. Servs., Inc.*, 531 F.3d 1190, 1194 (10th Cir. 2008) (citing *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731, 735 (1985)). "'Kansas courts [have] generally follow[ed] the First Restatement approach to resolving conflicts of law issues.'" *ARY Jewelers, LLC v. Krigel*, 277 Kan. 464, 481, 85 P.3d 1151, 1162 (2004) (quoting *Burlington N. Santa Fe Ry. v. Kansas City Ry.*, 73 F. Supp. 2d 1274, 1283 (D. Kan. 1999)). Under the First Restatement approach, in a wrongful death situation, the law of the state where the wrong occurred will govern the merits of the litigation. *See* Restatement (First) Conflict of Law § 391 cmt. b (1934) (for a wrongful death action "it is the place of the wrong (see § 377) and not that of the place where the defendant's conduct occurs or the place of death, which governs the right.").

Application of this principle could prove problematic in the case of mental health treatment that allegedly resulted in suicide, because if the place of the wrong is neither the place

of conduct nor the place of the death, as indicated in the First Restatement, then the wrong must have occurred wherever the alleged negligent treatment—which appears to include allegations of negligently prescribing medications—took hold and ultimately led to the decision to commit suicide. *C.f.* Restatement (First) Conflict of Law § 377 ill. 2 ("A, in state X, mails to B in state Y a package containing poisoned candy. B eats the candy in state Y and gets on a train to go to state W. After the train has passed into state Z, he becomes ill as a result of the poison and eventually dies from the poison in state W. The place of wrong is state Z."). Proving when precisely that event occurred and whether it happened in Kansas or Missouri could be a difficult evidentiary task. And when there is doubt, the law of the forum—Kansas law—should apply. *Cotracom Commodity Trading Co.*, 189 F.R.D. at 666-67.

It should be noted that some Kansas decisions have held that the law of the place of the resulting injury or death controls. *Ling*, 237 Kan. at 634; *Deitchman v. Weiner*, 893 F. Supp. 1508, 1509 n. 2 (D. Kan. 1995) Citation to such authority, however, is unavailing for two reasons.  First, these holdings conflict with the principles laid out in the Restatement (First) Conflict of Law §§ 377 and 391 that, for a wrongful death action, "it is the place of the wrong (see § 377) and not that of the place where the defendant's conduct occurs or the place of death, which governs the right." Significantly, the Kansas Supreme Court reaffirmed the applicability of the First Restatement as recently as 2004, which is after both of the above cases were decided. *ARY Jewelers LLC*, 277 Kan. at 481 ("When addressing choice of law issues, Kansas appellate courts still follow the Restatement (First) of Conflict of Laws (1934)." (citing reference omitted)). *Ling* and *Deitchman*, therefore, do more to confuse the issue than clarify it.

Second, and perhaps more importantly, the First Restatement contains an exception for this particular set of facts that points to application of Kansas law and is best explained with a

review of *Farwell v. Un*, 902 F.2d 282 (4th Cir. 1990). In that case, two doctors, one in Delaware and one in Maryland, allegedly rendered negligent mental health treatment when they failed to involuntarily commit a patient, who later committed suicide in Pennsylvania. *Id.* at 283-84. Maryland's choice of law principles applied, and like Kansas, Maryland applied the *lex loci delicti* doctrine from the First Restatement. *Id.* at 286-87.

The Fourth Circuit found that the "common sense" exception recognized in section 380(2) of the Restatement (First) Conflict of Laws was controlling. *Id.* at 286-87. This provision provides that "[w]here by the law of the place of wrong, the liability-creating character of the actor's conduct depends upon the application of a standard of care, and such standard has been defined in particular situations by statute or judicial decision of the law of the place of the actor's conduct, such application of the standard will be made by the forum." Restatement (First) Conflict of Laws § 380(2) (1934).[6] The Fourth Circuit recognized that the law of the states in which the respective wrongs occurred controlled when, "the states wherein occurred the wrongful conduct charged respectively to [the doctors,] define in critical ways the duty of physicians to psychiatric patients in the context of claims such as those here." *Farwell*, 902 F.2d at 287. Notably, the Tenth Circuit has cited this same provision in concluding that Kansas law applied. *Vrooman v. Beech Aircraft Corp.*, 183 F.2d 479, 480 (10th Cir. 1950) ("The parties have treated the question as controlled by the law of Kansas, where the airplane was manufactured and repaired [in Kansas], rather than [Indiana law] where the accident occurred. On the theory that

---

[6] Although the Fourth Circuit also pointed to some specific language in a Maryland statute, another court later recognized that the language in the First Restatement alone was sufficient for the result reached. *See Hood v. Lab. Corp. of Am.*, Case No. CCB-04-3870, 2006 WL 1555083 at *5, (recognizing that "other jurisdictions that employ the *lex loci delicti* choice of law provision have recognized the 'standard of care' exception in the context of medical negligence actions that did not involve [Maryland's] wrongful death statutes.") (citing references omitted)).

Kansas is the place of the wrong . . . we likewise consider the question as controlled by Kansas law" (citing, *inter alia*, Restatement of the Law of Conflict of Laws § 380)).

As discussed above, Plaintiff last received mental health treatment for six weeks from a VA facility in Kansas, and whatever occurred at that time would constitute the last substantial act or omission related to this cause of action, because what happened at that time would be critical—although perhaps not alone dispositive—of what the VA could or should have done to avoid the injury. When "the liability-creating character of the actor's conduct depends upon the application of a standard of care," as is the case here, then the "the 'place-of-wrong's-standard-of-care' exception to the classic *lex loci* rule," applies, and in this case, Kansas medical professionals should be judged by Kansas' standard of care, where William Draughon received the last significant treatment for his mental health issues from the VA. *See* Restatement (First) Conflict of Laws § 380(2); *Farwell*, 902 F.2d at 287.

Kansas substantive law should apply. Even if this Court harbors doubt, it should apply Kansas law until some other state's law is shown to apply. Defendant, nevertheless, will consider both the application of Kansas and Missouri law to Plaintiff's claims, since dismissal would be appropriate under either state's laws, albeit for different reasons.

**III.    This Court lacks subject-matter jurisdiction, because a proper claim has not been presented to the appropriate agency as required by the FTCA.**

A.    Standard of Review

Plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss on grounds of lack of subject matter jurisdiction. *See Marcus v. Kan. Dep't of Revenue,* 170 F.3d 1305, 1309 (10th Cir. 1999); *Smith v. Blue Dot Services Co.*, 283 F. Supp. 2d 1200, 1203 (D. Kan. 2003). A plaintiff must identify a specific statutory waiver of the government's sovereign immunity with respect to the claims made in the complaint.  *Marcus*, 170 F.3d at 1309. If

Plaintiff cannot establish that the Court has jurisdiction, the complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) generally takes one of two forms: either a facial challenge or a factual challenge.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). Once it is determined which state's law applies, the remainder of the challenge is facial. A party making a facial challenge attacks the allegations in the complaint regarding subject matter jurisdiction.  *Id.*   In evaluating a facial challenge, the court must treat the allegations in the complaint as true. *Id.*

 B. <u>A proper claim under the FTCA requires the claimant or someone entitled to file on his or her behalf to file a claim with the appropriate agency.</u>

The FTCA provides a limited waiver of the United States' sovereign immunity, but the waiver is conditioned on a number of prerequisites. *See Three-M Enterprises, Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977). One such prerequisite is that the claimant must first present a proper claim to a federal agency within two years of the alleged injury. 28 U.S.C. § 2675(a); *id.* at § 2401. This requirement is jurisdictional and must be construed strictly. *Three-M Enterprises*, 548 F.2d at 294; s*ee also Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971) (recognizing that courts cannot permit noncompliance or waiver of filing a proper claim). "Plaintiff[ ] bear[s] the burden of establishing that a proper administrative claim has been filed." *Frantz v. United States*, 781 F. Supp. 445, 450 (D. Del. 1992) (citing references omitted).

A claim made pursuant to the FTCA is properly presented to the federal agency, when the agency receives from claimant: (1) an executed standard form 95 or other written notification of the incident; (2) a specific, sum certain claim for money damages alleged to have occurred by reason of the incident; and (3) if the claim is filed on behalf of another claimant, evidence of the authority to present a claim on behalf of the claimant. 28 C.F.R. §14.2 (1990); *see also Frantz,*

781 F. Supp. at 450; *Franklin Sav. Corp. v. United States*, 970 F. Supp. 855, 861 (D. Kan. 1997) (citing 28 C.F.R. 14.2(a) (1996)), *aff'd* 180 F.3d 1124 (10th Cir. 1999). Failure to properly file a claim deprives this Court of subject-matter jurisdiction. *Pennsylvania v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11, 23 (3d Cir. 1975) (affirming dismissal of claims made on behalf of other property owners without evidence of authority to present those claims on their behalf), *overruled on other grounds*, *Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir.1981); *Gunstream v. United States*, 307 F. Supp. 366, 368 (C.D. Cal. 1969) (barring parents from asserting son's claim, because claim completely devoid of representative capacity).

C.      If Kansas law applies, Donald Draughon is not the claimant nor is there evidence that he is entitled to file a claim on behalf of the proper claimants.

Two potential claims exist under Kansas law: 1) a wrongful death action pursuant to K.S.A. § 60-1901 *et seq.*; and 2) a survival action pursuant to K.S.A. § 60-1801 *et seq.* If Kansas substantive law applies to this action, then it also establishes the proper party to bring each action. *See Dewitt v. Frecnhie's Custom Helmets*, Case 93-2332-JWL, 1994 WL 171571 at *1 (D. Kan. April 1, 1994).

1.      Wrongful Death in Kansas

In Kansas, a wrongful death action "may be commenced by any one of the heirs at law of the deceased who has sustained a loss by reason of the death." K.S.A. § 60-1902. An "heir" or "an heir at law" is the person "designated by the statute who succeeds to the estate of a deceased person." *Johnson v. McArthur*, 226 Kan. 128, 134, 596 P.2d 148, 152 (1979) (quoting reference omitted). In other words, an "heir at law" under Kansas's wrongful death statute is the person or people that would be entitled to the decedent's estate if the decedent had died intestate. *See id.*; *see also* K.S.A. § 59-501 *et seq.* (setting forth intestate succession).

14

In this case, Decedent died without a spouse but with two children. Compl., Doc. 1 at 28 When a decedent is survived by one or more children and no spouse—as is the case here—Kansas courts have concluded that the decedent's parents are not 'heirs at law,' under Kansas's wrongful death statute. *See Dewitt*, 1994 WL 171571 at *1; K.S.A. § 59-506.  For a wrongful death claim under Kansas law, Donald Draughon is not the proper claimant. That role belongs to R.B. and D.C., the minor children of William Draughon.

Minor children in Kansas are not permitted to sue on their own behalf and may only act through a guardian. *See* K.S.A. § 60-217(c); *accord* Fed. R. Civ. P. 17(c). At the time the claim was filed with the agency, it was recognized that Donald Draughon did not have authority to act on behalf of R.B. and D.C. and that it was likely their mothers were the children's guardians. SF 95 with Attachments at 13 (attached as Exhibit 1 to Exhibit B) ("William has 2 minor children, a 2 year old son and 5 year old daughter from two different brief relationships. *We are currently in the process of getting grandparental rights on both of them . . .*" (emphasis added)). Furthermore, Donald Draughon never presented the federal agency with any documentary or statutory evidence that he had the authority to file claims on the minor children's behalf. *See* 28 C.F.R. §14.2 ("[A] claim shall be deemed to have been presented when . . . . the tile or legal capacity of the person signing [is provided], and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agents, executor, administrator, parent, guardian, or other representative.").[7] Notably, the VA specifically requested such information from Donald

---

[7] Defendant recognizes that at least one circuit has read dicta from Tenth Circuit opinions to conclude that in the Tenth Circuit only "minimal notice" is required, *i.e.*, the Tenth Circuit does not require evidence of one's representational capacity to file an administrative tort claim on behalf of another. *See, e.g., Kanar v. United States*, 118 F.3d 527, 529 (7th Cir. 1997) (citing *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992)). First, any reading of *Cizek* that suggests it would not require evidence of authority, as required by 28 C.F.R. §14.2, stretches dicta, as *Cizek* was resolved on whether the claim contained a sum certain claim, not whether

Draughon. Letter from J. Patrick Wiese, Regional Counsel of U.S. Dep't of Veterans Affairs, to Donald Draughon, Alleged Claimant (March 20, 2012) (Doc. 1 at 16) ("If other individuals wish to be considered claimants, they will need to file valid tort claims. In addition to the SF 95 claim form, *please be sure to submit evidence of your authority to present a claim on behalf of each additional claimant.*" (emphasis added)).

There is no evidence that Donald Draughon is a lawyer or is capable of acting as a legal representative for the children or their respective mothers. *See Carriker v. Richardson*, Case No. 101,845; 2009 WL 3172829 at *6 (Kan. Ct. App. Oct. 2, 2009) (grandfather, a non-lawyer, not permitted to represent mother during custody modification proceeding); *accord Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) ("[A] minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.").   Because Donald Draughon is not the proper claimant, because he lacks actual authority to act on the behalf the proper claimants, and because he provided no evidence of his authority to present claims on behalf of the proper claimants under Kansas law, a proper claim has not been presented to the agency. *See Nat'l Ass'n of Flood Insurers.*, 520 F.2d at 23; *Gunstream*, 307 F. Supp. at 368. The filing of a proper claim is jurisdictional, and there being no proper claim for wrongful death presented to the agency, this Court must dismiss any wrongful death claim arising under Kansas law for lack of subject-matter jurisdiction.

---

evidence of one's authority to file a claim was required. Second, the District of Kansas has recognized the validity of 28 C.F.R. 14.2(a) and the requirement of providing evidence of one's authority to file a claim on behalf of another. *See Franklin Sav. Corp.*, 970 F. Supp. at 861 ("Moreover, FSC proffers no evidence that it is authorized to assert a claim on behalf of FSA. *See* 28 C.F.R. § 14.2(a) (1996)."). Third, even if Tenth Circuit followed the "minimal notice" rule, and did not require evidence of one's authority, a person that lacked authority to file a claim on behalf of another, such as Mr. Draughon, still could not file a valid claim for someone else.

2.    Survival Claim in Kansas

To the extent, the Complaint can be read to state a survival action, this Court would lack subject-matter jurisdiction because the administrative claim filed with the agency cannot be read to assert a survival action, and the proper claimant has not yet filed a claim with the agency.  The only indication that the administrative claim is asserting a survival action is the request for "personal injury." *See* SF 95 at 1, 13 (attached as Exhibit 1 to Exhibit B). But this Court has previously recognized that, when the only reference to a survival action in an administrative claim is damages for "personal injury," then that is insufficient to state a survival action, especially when the claimant fails to provide evidence or even refer to his or her representative capacity. *See Selvidge ex rel. Selvidge v. United States*, Case No. 93-4083-DES, 1994 WL 725399 at *6 (D. Kan. Dec. 30, 1994). As in *Selvidge*, any possible notice imparted from inclusion of the words "personal injury" was negated and the government's ability to conduct a proper investigation was frustrated, when Donald Draughon never claimed to be estate administrator nor provided evidence of that status. *See id.*  Accordingly, because a survival claim was never presented to the VA, this Court cannot exercise subject-matter jurisdiction over such a claim. *See Dondero v. United States*, 775 F. Supp. 144, 148 (D. Del. 1991) ("The Government must be aware of each separate claim and given an opportunity to investigate each separate claim." (citing references omitted)).

Second, Donald Draughon has not established that he is a proper claimant under state law. "[A] survival action *allows the personal representative* to recover damages accrued by the injured party between the date of injury and death for the benefit of the decedent's estate." *Mason v. Gerin Corp.*, 231 Kan. 718, 647 P.2d 1340, 1343 (1982) (emphasis added). As required by regulations, Donald Draughon has not presented any statutory or documentary evidence of his

capacity to act as personal representative of the estate. Failure to provide evidence of one's ability to file a claim on behalf of another is fatal to that claim. *See* Section III.C.1, *supra* at 15-17; 28 C.F.R. §14.2; 28 U.S.C. § 2675(a); *Nat'l Ass'n of Flood Insurers.*, 520 F.2d at 21; *Gunstream*, 307 F. Supp. at 368. Moreover, Donald Draughon only signed the SF 95 in his individual capacity, and not as an estate administrator or executor. *See* SF 95 (attached as Exhibit 1 to Exhibit B). Therefore, this Court lacks subject-matter jurisdiction over any possible survival claim brought pursuant to Kansas law as alleged in the Complaint.

      D.     <u>If Missouri law applies, Donald Draughon may be a claimant for wrongful death.</u>

Although Kansas law applies to this action, under Missouri law, "[t]he language of the survivorship statute and the wrongful death statute are mutually antagonistic. The survivorship statute applies when the injury alleged did not cause death, and the wrongful death statute applies when the injury did cause death." *Kivland v. Columbia Orthopaedic Group, LLC*, 331 S.W.3d 299, 302 n.3 (Mo. 2011) (citing referenced omitted). In Missouri, only one cause of action may be pursued.

As previously discussed, the administrative claim cannot be read to state a survival action. *See* Section III.C.2, *supra* at 17-18. Since a survival claim was never presented to the agency, the United States' sovereign immunity for that cause of action was never waived. *Id.* Moreover, a survival action in Missouri, as in Kansas, can only be pursued by the personal representative of the estate. *See* Mo. Rev. Stat. § 537.020.1 ("Causes of actions for personal injuries, other than those resulting in death . . . ; but in case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party."); *see also* Mo. Rev. Stat. § 537.021.1. Failure to provide evidence of one's status as the personal representative is fatal to properly filing a claim with an agency. *See* Section III.C.1, *supra* at 15-

17; 28 C.F.R. §14.2; 28 U.S.C. § 2675(a); *Nat'l Ass'n of Flood Insurers.*, 520 F.2d at 23; *Gunstream*, 307 F. Supp. at 368.

A wrongful death claim under Missouri law, on the other hand, may be brought by one's father. Mo. Rev. Stat. § 537.080.1 (recognizing that damages may be sued for "[b]y the spouse or children . . . . or by the father or mother of the deceased."). To the extent Missouri law applies, Donald Draughon may be an appropriate claimant. But only Donald Draughon signed and filed an SF 95 with the agency. *See* SF 95 with attachments (attached as Exhibit 1 to Exhibit B). Every other individual or entity entitled to sue under Missouri's wrongful death statute were required to submit their own claim with the agency, and since they did not, their suits are barred. *See* Declaration of William G. Rogers (attached as Exhibit B) (noting that no tort claims could be found for Laurie Draughon, M.D., R.D., D.D. or Jenifer Hultgren); *Nat'l Ass'n of Flood Insurers.*, 520 F.2d at 23 ("Under these procedures, before the jurisdiction of the courts may be invoked, each claimant must submit an independent and separate claim to the appropriate administrative agency for review and possible settlement. 28 U.S.C. § 2675(a)."). But since Kansas law applies to this action, dismissal is appropriate for the reasons stated in Section III.C.

**IV.    For various reasons, Plaintiff has failed to state a claim upon which relief can be granted.**

A.    <u>Standard of Review</u>

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the

misconduct alleged." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Accordingly, while the Court must take all of the factual allegations in the complaint as true, "a Plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss. *Iqbal,* 129 S.Ct. at 1950. The remaining arguments—moving from broader arguments for dismissal to narrower arguments on particular theories of liability—explain how Plaintiff's Complaint under prevailing law fails to state a claim upon which relief can be granted.

B.     Any cause of action under Kansas law is barred by Kansas's statute of repose.

Although under applicable Kansas law a proper administrative claim was not presented to the agency, this suit is also barred by Kansas' statute of repose for medical malpractice actions, which states that "[a] cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action . . . [but] in no event shall an action be commenced more than four years beyond the time of the act giving rise to the cause of action." *See* K.S.A. § 60-513(c). Kansas courts have applied this provision strictly. *See Natalini v. Little,* 278 Kan. 140, 144, 92 P.3d 567, 569 (2004) (holding that "even if a malpractice plaintiff's premature death is highly likely to be caused by the malpractice, plaintiff's survival for more than 4 years beyond the negligent act means no wrongful death action will ever be possible. . . . [T]hey would be prevented from bringing an action because 60-513(c)'s repose language would have barred the injured patient's own lawsuit before his or her death." (citing K.S.A. § 60-513(c) and K.S.A. § 60-1901)). Because the United States is only liable to the same extent as "a private person would be liable to the claimant in accordance with the law of the place where the act or

omission occurred," this provision, would also bar liability in this case. *See, e.g., Manion v. United States*, Case No. CV-06-739-HU. 2006 WL 2990381 (D. Or. 2006) (applying a state's statute of repose to bar a cause of action filed under the FTCA).

William Draughon died on March 18, 2010, and while the last negligent act or omission likely occurred before this date, it is clear that no negligent acts or omissions could have occurred after this date. This suit was filed on June 5, 2014, nearly four years and two months after William Draughon's death. Under Kansas law, Plaintiff has failed to state a claim against the United States, since the four-year repose period in K.S.A. § 60-513(c) has already run.

C.     A *pro se* litigant cannot assert claims on the behalf of other parties, and Donald Draughon cannot assert a claim solely on his own behalf.

Even if this Court were to conclude that it had subject-matter jurisdiction, it would still be required to dismiss this action, under both Kansas and Missouri law, because a *pro se* plaintiff cannot present claims on the behalf of others. More importantly, Donald Draughon cannot, as a matter of law, present a claim solely on his behalf, making dismissal an appropriate remedy.

1.     Kansas Law[8]

A letter filed with the Complaint indicates that this federal lawsuit "is not solely on behalf of my Son's Estate but also on behalf of myself, William[']s Father, my wife, and William's step-mother, Laurie, my son, William[']s Brother, M.D., William[']s daughter, my granddaughter, R.B. (7 yrs old) and William[']s son, my grandson, D.C. (5yrs old), and my daughter-in-law, William[']s ex-wife, Jenifer Hultgren for cause of action of the wrongful death of my son, the damages it has caused and the loss of consortium for all of us due to the death of

---

[8] Notably, under Kansas law the only individuals and entities entitled to relief are R.B., D.C. and the Estate of William Draughon. *See* Section III.C, *supra* at 14-18. Moreover, no one, other than Donald Draughon, filed a claim with the agency. *See* Declaration of William G. Rogers (attached as Exhibit B)

my son." Compl., Doc. 1 at 8. It is axiomatic that a *pro se* plaintiff cannot represent another individual or entity. Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented."); *Miller v. Bobbit*, 779 F. Supp. 495, 496 (D. Or. 1991) (recognizing that because a *pro se* plaintiff cannot represent another individual, all *pro se* litigants must sign pleadings of which they wish to be a part). Yet, none of the individuals identified in the letter, nor in the case of the children, their duly appoint guardians, have signed the Complaint in this case, and there is no indication that Donald Draughon is a lawyer or has the ability to file lawsuits on behalf of someone other than himself.

Just as Donald Draughon cannot represent the individuals named in the letter, he also cannot represent the estate. *See Prigden v. Andersen*, 113 F.3d 391, 393 (2d Cir. 1997) ("[A]n administrat[or] or execut[or] of an estate may not proceed *pro se* when the estate has beneficiaries or creditors other than the litigant."); *see also Hale Joy Trust v. Comm'r of I.R.S.*, 57 Fed. App'x 323, 324 (9th Cir. 2003) (holding that "[a] non-attorney trustee may not represent a trust *pro se* in an Article III court"); *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994) (holding that "a nonlawyer, such as these purported 'trustee(s) *pro se*' has no right to represent another entity, i.e., a trust, in a court of the United States").

To the extent the Complaint asserts causes of actions on behalf of any party besides Donald Draughon in his individual capacity, those claims must be dismissed. *See Rader v. U.S.D. 259 Wichita Pub. Schs.*, 844 F. Supp.2d 1206, 1211, 1211 n.5 (D. Kan. 2011) (holding that 28 U.S.C. § 1654, which permits parties to appear *pro se*, "does not permit *pro se* litigants to represent other parties, even their own children," and that any such claims must be dismissed.). As discussed above, Kansas law does not recognize a cause of action for Donald Draughon to

assert on his behalf, and he cannot state a claim on behalf of any other individual or the estate. Thus, under Kansas law, dismissal for failure to state a claim is appropriate.

2.      Missouri Law

Although Kansas law applies, the result under Missouri law is no different. Although Donald Draughon is a party entitled to sue under Missouri's wrongful death statute, by acting as the Plaintiff, he is, nevertheless, representing the interests of other parties. Under Missouri's wrongful death statute "[o]nly one action may be brought under this section against any one defendant for the death of any one person." Mo. Rev. Stat. §.537.080.2. Thus, when two or more people are entitled to sue and recover under Missouri's wrongful death statute then "[a]ny settlement or recovery by [that single permissible suit] shall be for the use and benefit of those who sue or join, or who are entitled to sue or join . . . ." Mo. Rev. Stat. § 537.095.1.

Since only one wrongful death suit against any one defendant is permitted under Missouri's wrongful death statute, allowing Donald Draughon to proceed *pro se* would require him to represent the interests of other individuals, such as William Draughon's children, that is, if they had filed a claim with the appropriate federal agency.  Indeed, to allow Mr. Draughon to proceed with this suit under Missouri's wrongful death scheme under the above circumstances would be akin to permitting an executor or administrator of an estate to pursue a claim for the estate in which there are other beneficiaries, and that is clearly impermissible. *Cf. Prigden*, 113 F.3d at 393. To the extent Missouri's wrongful death statue requires Donald Draughon to represent the interests of another party, dismissal for failure to state a claim is appropriate, because Donald Draughon cannot represent other individuals and cannot assert a claim solely on his own behalf. If, however, the Court determined that only Donald Draughon was entitled to

pursue a wrongful death claim under Missouri law, because he was the only individual to file a proper claim with agency, then the above discussion would be inapplicable.

D.   To the extent Plaintiff's Complaint alleges either that the alleged negligent conduct occurred while William Draughon was in the military or that this tort sprung from William Draughon's time in the military, it is barred by the *Feres* doctrine.

The Complaint alleges that the Marines and the VA had a duty to provide William Draughon with adequate treatment for his PTSD and that they both acted negligently in not providing appropriate or correct treatment. Significantly, Plaintiff's Complaint provides that the alleged negligent conduct likely originated while William Draughon was still an active duty marine. Compl., Doc. 1, at 22 ("So the USMC, instead of putting their marines who decided not to re-up thru a mandatory 4 or 5 months of therapy and helping them to learn how to get back into reality of real life and deal with PTSD, just let them party their way through it.").

A number of circuits, including the Tenth Circuit, have recognized that an alleged tort that begins before an active duty member's discharge from the military and continues afterwards is barred under the *Feres* doctrine. *See Maddick v. United States*, 978 F.2d 614, 616 (10th Cir. 1992) (recognizing that "[w]here a claimant alleges only a post-discharge continuation of that in service tort, it too is barred by *Feres*." (citing references omitted); *see also Pringle v. United States*, 208 F.3d 1220, 1223-24 (10th Cir. 2000) (recognizing that the *Feres* doctrine now "encompass[es], at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military" (emphasis in the original)).

To the extent the Complaint can be read to assert a cause of action beginning with Plaintiff's time in the military and extending to the date of his death, the entirety of that cause of action fails to state a claim, because it would be barred by the *Feres* doctrine. To the extent Plaintiff is merely alleging that the United States Marine Corp negligently controlled active duty

marines returning from the battlefield, which is separate and distinct from the VA's post-discharge conduct, then those allegations related to William Draughon's time as an active duty Marine cannot form the basis of a claim under the *Feres* doctrine.

     E.    <u>This Court lacks subject matter jurisdiction to review any claim arising from the VA's disability determination.</u>

It is clear that Plaintiff is not alleging that William Draughon was misdiagnosed or diagnosed too late. Nor does Plaintiff allege that the VA failed to provide any treatment, as he recognizes that the VA provided "treatment and support group[s]." Compl., Doc. 1 at 23. Instead, Donald Draughon seems to be generally alleging that the treatment William Draughon received was either inadequate or inappropriate to prevent his son from committing suicide. *Id.* at 25 ("William revealed to them many times of his thoughts of suicide due to him not being able to deal with the demons and the pain anymore from his PTSD. The military neglected him medically by not properly addressing and treating William['s] PTSD and now my son is dead because of it . . . .") (removed caps lock in original). Plaintiff appears to provide only two allegations of how the VA's treatment was inadequate.

One allegation of inadequate treatment appears to be that the VA did not place William Draughon in long-term treatment. *Id.* at 25 ("Why didn't one of those Doctors make a phone call saying this guy needs to be in long term treatment so we can properly treat and address his total full blown PTSD . . . ."). One page earlier, however, Plaintiff acknowledges that "[t]he VA wanted William Draughon in treatment for his PTSD" and that the "Doctors were wanting him to continue to long term tx [treatment]," but the Complaint recognizes that William Draughon refused because "he was needing to work to pay bills." *Id.* at 24. Notably, Plaintiff makes no allegations that the VA should have had William Draughon involuntarily committed, nor is there any allegation that such attempt would have been successful.  Instead, the Complaint seems to

25

allege that William Draughon did not attend long term treatment because the VA had not provided William Draughon more disability in a timely fashion. *Id.* at 24 ("The VA wanted William in treatment for his PTSD but William was arguing with the VA for more disability and of course they weren't fast enough even though the Doctors were wanting him to continue to longer term tx. . . ."). Plaintiff's allegation seems to be that the VA's untimeliness or failure to pay additional benefits caused William Draughon to opt out of additional long-term treatment, which allegedly resulted in his death.

Plaintiff has not alleged that William Draughon properly exhausted his administrative remedies with the VA to rectify any alleged defect with his disability rating or the amount he was paid. But even if he had, 38 U.S.C. § 511(a) precludes this Court from exercising subject-matter jurisdiction to review the disability rating, the amount of money he received, or the timeliness of the VA's decision. S*ee Jones v. United States*, 727 F.3d 844, 847 (8th Cir. 2013) (holding that district court lacked subject matter jurisdiction pursuant to §511(a) to resolve whether the VA had acted negligently in benefits determination); *Slater v. United States*, 175 F. App'x 300, 305 n.2 (11th Cir. 2006) ("We have no jurisdiction over any decision of law or fact necessary to the provision of benefits by the Secretary to veterans . . ."); *Kumnick v. United States*, Case No. 8:05-CV-01511-JDW-MAP, 2007 WL 4614771 at *2 (M.D. Fla. Dec. 31, 2007) ("The plain language of 38 U.S.C. § 511(a) precludes this court's exercise of subject matter jurisdiction over Plaintiff's claim that Defendant failed to properly and timely verify Plaintiff's eligibility for VA benefits."); *Quarles v. United States*, 731 F. Supp. 428, 431 (D. Kan. 1990) ("We find that §211(a) [§511's predecessor] precludes plaintiff's attempt through the FTCA to seek review of the VA decision to deny him benefits.").  Because this Court lacks subject-matter

jurisdiction to review the VA's disability determination, any claim resting on that allegation fails to state a claim upon which relief can be granted.

F.    The remaining allegations lack sufficient factual allegations to support a claim upon which relief can be granted.

The only other allegation of negligent treatment in the Complaint appears to be that "[t]he VA knowing that [William Draughon] had issues with alcohol knowing that he had meds that were intensified with alcohol and would cause suicidal thoughts, irrational thinking, improper judgment . . . WHY WHY WHY . . . wouldn't they do something to help him." Compl., Doc. 1 at 25. Notably, there are no allegations that the medications prescribed were inappropriate for the treatment of PTSD or that the medications failed to work. In fact, the Complaint appears to state the opposite. (*Id.* at 23) ("[T]he meds helped [William Draughon] forget about the things he did 'over there.'"). There are also no allegations that William Draughon was not properly warned of the side-effects of his medications or to avoid alcohol while taking these medications.

Instead, the claim seems to be that because of William Draughon's history of alcohol abuse, these medications should not have been prescribed in the first instance. These facts, however, "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557. Without a nexus between the alleged conduct and the result—that is, allegations that William Draughon had taken his prescription medications *and* drank alcohol at or near the time of his suicide—these allegations merely correlate two facts without providing any reason to conclude it contributed William Draughon's death. *See id.*

Put another way, there are simply no allegations in Plaintiff's Complaint that expressly or inferentially identify the VA's treatment as the but-for or proximate cause of William Draughon's suicide, an element of a medical malpractice action in both Kansas and Missouri. *See Watikins v. McAllister*, 30 Kan. App. 2d 1255, 1258, 59 P.3d 1021, 1023 (Kan. Ct. App.

2002) ("A medical malpractice claim requires the same elements of proof as any negligence action: . . . .(4) a causal connection between the duty breached and injury suffered."); *Super v. White*, 18 S.W. 511, 515-16 (Mo. Ct. App. 2000) ("Hence, for the appellants to succeed on their wrongful death actions against the respondents, based on their claims of medical malpractice, they were required to show the requisite elements of a medical malpractice claim [including, *inter alia*,] . . . they were required to show that respondents' alleged negligence caused the decedent's death." (citing references omitted)).

While *pro se* complaints must be liberally construed, a *pro se* litigant is not relieved of the basic obligation to provide sufficient factual support for every element of the claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Because Plaintiff has failed to state every element of his claim and sufficient factual support for those claims, dismissal is appropriate.

## V.   If this Court determines that Missouri law applies and rejects all prior arguments, then transfer of this case to the United States District Court for the Western District of Missouri is appropriate.

If this Court determines that dismissal is appropriate, then it can and should dismiss the Complaint, because it would be a waste of judicial resources to transfer a case that will be dismissed once it arrives at its intended destination. *See Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) ("[A] court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed."). As noted above, dismissal is appropriate for a number of reasons, and this action should be dismissed.

Nevertheless, if this Court determines that Missouri law applies and that dismissal is otherwise not appropriate, then transfer to the United States District Court for the Western District of Missouri would be appropriate. As 28 U.S.C. § 1404(a) recognizes, "[f]or the

convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." [9] Here, this action could have been brought in the United States District Court for the Western District of Missouri, since Plaintiff resides in that district. *See* 28 U.S.C. §1402(b); *see also* Compl., Doc. 1, at 1.

A district court has wide discretion to decide whether to transfer a case pursuant to §1404(a) considering the convenience and fairness of each individual case. *See Am. Heart Disease Prevention Found. v. Hughey*, 905 F. Supp. 893, 896-97 (D. Kan. 1995). This Court may consider a number of factors in deciding whether to transfer venue, including the advantage of having local courts determine questions of local law. *See Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967) (listing a host of factors). While Plaintiff's choice of forum is usually given great deference, transferring the case from Kansas City, Kansas, to Kansas City, Missouri, will not greatly shift the burden for any party but will provide a court that is better versed in the applicable law. *See Am. Heart Disease Prevention Found.*, 905 F. Supp. at 897 (recognizing that Plaintiff's choice of forum, while entitled to great deference, may give way, when Plaintiff will suffer little harm and there are tangible benefits from transferring the case). Therefore, if this Court determines that dismissal is not appropriate and Missouri law applies, then it should transfer venue to the United States District Court for the Western District of Missouri.

## CONCLUSION

---

[9] Venue would technically be proper in Kansas, as part of the alleged negligent act or omission occurred in Kansas. *See* 28 U.S.C. §1402(b). Therefore, this is not a case in which this Court lacks venue and must transfer, as would be the case under 28 U.S.C. § 1406(a). Instead, this is a case where transfer merely makes good sense given the individual considerations of this case.

Wherefore Defendant requests that Plaintiff's Complaint be dismissed in whole or in part for lack of subject-matter jurisdiction or failure to state a claim upon which relief can be granted. If Missouri law applies and dismissal is inappropriate, then Defendant requests that Plaintiff's case be transferred to the United States District Court for the Western District of Missouri, or for any other relief this Court deems just and equitable.

Respectfully submitted,


s/ Jason E. Oller
JASON E. OLLER
Assistant United States Attorney
301 N. Main, Suite 1200
Wichita, KS  67202
Tele:   316-269-6481
Fax:    316-269-6484
Jason.Oller@usdoj.gov
Ks S.Ct.No. 24341


## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2014, I electronically filed the foregoing DEFENDANT'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR TRANSFER OF VENUE with the clerk of the court by using the CM/ECF system.

I further certify that I mailed the forgoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participant:

Donald Draughon
6101 NE Meadow Lane
Kansas City, MO  64118
*Pro Se Plaintiff*


 Jason E. Oller
JASON E. OLLER
Assistant United States Attorney