## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DONALD DRAUGHON,            ) | |
|            ) | |
|         **Plaintiff,**     ) | |
|            ) | |
| vs.            ) | |
|            ) | **Case No. 14-2264-JAR-GLR** |
| UNITED STATES OF AMERICA, et. al   ) | |
|            ) | |
|         **Defendants.**     ) | |

## MEMORANDUM AND ORDER

Plaintiff Donald Draughon, proceeding *pro se* and *in forma pauperis*, brings this Federal Tort Claims Act ("FTCA") action against the United States of America, Department of Veterans Affairs, Office of Attorney General, and United States Attorney.  Plaintiff alleges that Defendants are liable for the death of his son, William Draughon, because they negligently treated his son's post traumatic stress disorder ("PTSD"), which ultimately led to his suicide.  He purports to file this case on his own behalf, and on behalf of Williams Draughon's minor children, R.B., D.C., and M.D.[1]  This matter is before the Court on the Government's Motion to Dismiss Or, In The Alternative, For Transfer of Venue (Doc. 15).  Plaintiff also requests a transfer of venue in his response (Doc. 31).  This matter is now fully briefed and the Court is prepared to rule.

The Government's motion to dismiss for lack of subject matter jurisdiction is granted with respect to (1) Defendants Department of Veterans Affairs, Office of Attorney General, and United States Attorney based on sovereign immunity; (2) any alleged claim that arises from

---

[1]Plaintiff also named as Plaintiffs his wife, Laurie Draughon, and William Draughon's ex-wife, Jennifer Hultgren.  These names were removed from the case caption because Plaintiff may not represent another individual or sign documents on their behalf unless he is a licensed attorney.

William Draughon's active duty service; and (3) any claim concerning veteran's benefits.  It is otherwise denied.  The Government's motion to dismiss for failure to state a claim is granted in part and denied in part.  The motion is granted as to any survival action asserted under state law.  And as explained in further detail below, assuming as true the facts alleged in the Complaint and viewing those facts in the light most favorable to Plaintiff, Missouri law may apply and permit Plaintiff's wrongful death claim in his capacity as an heir of William Draughon.  The Court also denies the parties' motions for transfer and appoints counsel to represent Plaintiff.

## I.      Factual and Procedural Background

The following facts are alleged in the Complaint and assumed to be true for purposes of this motion.  Because Plaintiff is a *pro se* litigant, the Court will construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[2]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[3]  The Court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[4]

Plaintiff's son William Draughon enlisted as a United States Marine in March 2001 and served several tours overseas.  In October 2005, William Draughon returned from a tour in Iraq to San Diego, California.  There, William Draughon decided not to re-enlist as a Marine.  Even so, he was required to officially stay in the Marine Corps until February 2006.  During those several months, he and his colleagues who were not re-enlisting with the Marines were only

---

[2]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[3]*Id.*

[4]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

required to work for a few hours at the base each day.  There was little structure and almost no

rules.  Plaintiff, William Draughon's father, claims that the lack of rules, structure, and treatment

for Marines who recently returned from combat led to months of alcohol and substance abuse.

The substance and alcohol abuse continued after William Draughon returned home to

Kansas City, Missouri.  For the next five years, through the Department of Veterans Affairs

(VA), William Draughon was treated for his mental and physical illnesses.  He was admitted to

inpatient programs and frequently saw doctors both in Kansas and Missouri.  William Draughon

faced a mountain of problems because of his physical and mental illnesses, which likely resulted

from his service overseas.  He was separated and divorced, fathered two children from different

mothers, abused alcohol and drugs, accumulated a significant amount of debt, and consistently

struggled to control his depression and suicidal thoughts.  On March 17, 2010, William

Draughon committed suicide in Kansas City, Missouri.

Plaintiff filed an administrative complaint with the Veterans' Administration ("VA"), and

the VA issued a final denial of the administrative claim on December 6, 2013.  Plaintiff then

timely filed this action.  Plaintiff alleges that the Government was negligent in its treatment of

William Draughon's PTSD and other mental health issues, and that, if not for the Government's

negligence, William Draughon would not have committed suicide.  The Court liberally construes

the Complaint as alleging wrongful death and survival claims under the Federal Tort Claims Act

("FTCA").

## II.    Subject Matter Jurisdiction

A.       **Standard**

Unlike state courts, federal courts are courts of limited jurisdiction and, as such, must have a statutory or Constitutional basis to exercise jurisdiction.[5]  A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[6]  The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[7]  Here, "[P]laintiff bears the burden of showing why the case should not be dismissed."[8]  Mere conclusory allegations of jurisdiction are not enough.[9]

A motion to dismiss for lack of subject matter jurisdiction is made under Rule 12(b)(1). Generally, a Rule 12(b)(1) motion to dismiss takes one of two forms: a facial attack or a factual attack.  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[10]  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district

---

[5]*Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage,* 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal citations omitted).

[6]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *abrogated on other grounds by Dart Cherokee Basin Operating Co.*, 135 S. Ct. 547 (2015).

[7]*Montoya*, 296 F.3d at 955.

[8]*Harms v. IRS*, 146 F. Supp. 2d 1128, 1130 (D. Kan. 2001).

[9]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir. 1999).

[10]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

4

court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[11]  Here, the Government makes both a facial and factual attack on this Court's subject matter jurisdiction.

### B.    Discussion

The Government argues that this Court lacks subject matter jurisdiction over Plaintiffs claims on the following grounds: (1) sovereign immunity as to the federal agencies named as defendants; (2) administrative exhaustion; and (3) any claim concerning a previous disability determination by the VA under 38 U.S.C. § 511(a).  The Court discusses each in turn.

### 1.    Sovereign Immunity

Liberally construing the Complaint, Plaintiff alleges claims of wrongful death medical malpractice and survival based on the acts or omissions of various government agencies that oversaw William Draughon's mental health treatment after his Iraq tours.  It is well-settled that the United States can only be sued if it consents.[12]  The FTCA serves as a waiver of sovereign immunity by the United States with respect to certain injuries caused by United States employees in the course of their employment.[13]  But agencies of the United States cannot be sued in their own name because plaintiffs only have a remedy against the United States.[14]  Because Plaintiff's

---

[11]*Id.* at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[12]*United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued.'"); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003).

[13]28 U.S.C. § 1346(b).

[14]28 U.S.C.§ 2679(b)(1); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1142 (10th Cir. 1999).

claim is only authorized under the FTCA, the only party he can sue is the United States.[15]  All other Defendants are therefore dismissed.

Additionally, the FTCA does not waive the United States' immunity with respect to injuries that "arise out of or are in the course of activity incident to service."[16]  Therefore, if Plaintiff alleges injuries to William Draughon that are incident to his military service, the *Feres* doctrine applies and this Court lacks subject matter jurisdiction to hear the case.[17]  The facts alleged in the Complaint suggest injuries to William Draughon both before and after his military service concluded.  To be sure, Plaintiff's medical treatment in the Kansas and Missouri areas, to which the majority of factual allegations relate, occurred after his active duty service concluded. The *Feres* doctrine does not apply to "torts that arose *after* completion of an individual's military service."[18]  To the extent Plaintiff's claims relate to any act or omission by the United States during Plaintiff's active duty service, they are barred by the *Feres* doctrine.

### 2.    Administrative Exhaustion

Section 2675(a) of the FTCA requires plaintiffs to exhaust their administrative remedies before filing a lawsuit in federal court.[19]  This requirement cannot be waived and is jurisdictional in nature.[20]  Therefore, a federal court will not have subject matter jurisdiction over a claim if the

---

[15]*Id.*

[16]*Feres v. United States*, 340 U.S. 135, 146 (1950); *Shaw v. United States*, 854 F.2d 360, 361 (10th Cir. 1988).

[17]*Maddick v. United States*, 978 F.2d 614, 615 (10th Cir. 1992).

[18]*Id.* at 616 (citing *United States v. Brown*, 348 U.S. 110, 112–13 (1954)).

[19]28 U.S.C. § 2675(a).

[20]*Three-M Enters., Inc. v. United States*, 548 F.2d 293, 294–95 (10th Cir. 1977).

plaintiff has not exhausted his administrative remedies.[21]  The Tenth Circuit, interpreting this exhaustion requirement, has adopted the rule that a plaintiff must file "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."[22]

### a.    Proper Claim

The Government first argues that in addition to a written statement describing the injury and a sum certain damages claim, Plaintiff's claim must also be "proper" under the applicable state law; that is, Plaintiff must be the proper party.  The Government argues that this Court's subject matter jurisdiction therefore depends on which state's law applies because in order to exhaust administrative remedies, plaintiffs must have a proper claim under the applicable state law.  The Government argues that Kansas law applies, and that under Kansas law, Plaintiff is not a proper party and therefore did not exhaust his administrative remedies.

The statute, however, does not require the claimant to be proper under state law, nor does it require the claim itself to be proper.[23]  The applicable federal regulations, on the other hand, require plaintiffs to follow certain more specific procedures when filing a claim with a federal agency.[24]  If failure to comply with these requirements deprived federal courts of subject matter jurisdiction, then the Government's argument that Plaintiff's claim must be proper under state law might be more persuasive.  The Tenth Circuit has not squarely addressed whether

---

[21]*Id.*

[22]*Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991); *see also Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005).

[23]*See* 28 U.S.C. § 2675(a).

[24]28 C.F.R. §§ 14.1–14.11.

compliance with regulations such as 28 C.F.R. § 14.4(b) is part of the jurisdictional requirement that Plaintiff present the claim.[25]

The Government's position not only requires an extension of the Tenth Circuit's jurisdictional rule but it is also against the weight of authority.[26]  The majority of courts have concluded that the regulatory requirements are not jurisdictional, and failure to comply with the regulations or state laws does not deprive federal courts of subject matter jurisdiction.[27]  The Government relies on the Third Circuit decision of *Bialowas v. United States*,[28] where the court found a failure to exhaust where the FTCA Form 95 was defective and the plaintiff failed to submit medical reports and bills to the agency.[29]  The Third Circuit has since clarified the "limited" holding of that case: "the reference in the opinion to the failure to file medical reports

---

[25]*See King v. United States*, No. 12-CV-616-JED-TLW, 2013 WL 1856472, at *3 (N.D. Okla. May 2, 2013) (recognizing the lack of Tenth Circuit authority on whether compliance with the regulations is part of the exhaustion requirement, but following the majority of circuit courts, which have concluded that the regulations are not part of the jurisdictional presentment requirement).

[26]*See id.* at *4 (finding, "consistent with the majority position," that the plaintiff's failure to comply with the regulations did not deprive the court of subject matter jurisdiction).

[27]*See, e.g.*, *Tucker v. U. S. Postal Serv.*, 676 F.2d 954, 960 (3d Cir. 1982) (holding that regulatory requirements are not jurisdictional in nature); *GAF Corp. v. United States*, 818 F.2d 901, 919–20 (D.C. Cir. 1987) (adopting the rule that the FTCA only requires a plaintiff to give an agency sufficient notice of the claim and place a value on the claim); *Warren v. U.S. Dept. of Interior of Land Mgmt*, 724 F.2d 776, 778 (9th Cir. 1984) (en banc) (same); *Knapp v. United States*, 844 F.2d 376, 378–79 (6th Cir. 1988) (same); *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980) (same); *Zywicki v. United States*, No. CIV.A. 88-1501-T, 1991 WL 128588, at *2 (D. Kan. June 20, 1991) (following the Third, Fifth, Sixth, Seventh, Ninth, and District of Columbia circuits that have "reasoned that the only jurisdictional requirements of the FTCA administrative process are that the claimant give the agency adequate notice of the claim and the underlying facts and that the claimant place a value on the claim" and finding that state law requiring personal representative to bring suit is not jurisdictional).  *But see Kanar v. United States*, 118 F.3d 527, 529 (7th Cir. 1997) (finding that the regulation supplies the definition of "claim" in FTCA cases); *Mader v. United States*, 654 F.3d 794, 801–02 (8th Cir. 2011) (finding failure to exhaust where the plaintiff's status as personal representative had been terminated prior to her administrative claim and such status was required by state law).

[28]443 F.2d 1047 (3d Cir. 1971).

[29]*Id.* at 1050; *see also Pennsylvania v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11, 23 (3d Cir. 1975), *overruled on other grounds by Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir. 1981); *Gunstream v. United States*, 307 F. Supp. 366, 368 (C.D. Cal. 1969).

and bills must be read as no more than an indication that defects in the Form 95 had not been cured by the timely furnishing of supplementary information."[30]  The court explained that it is not the regulations, but the statute, that acts as a bar to the court's subject matter jurisdiction.[31]  Moreover, the Government points to no regulations that require compliance with <u>state</u> law for purposes of administrative exhaustion.  The Court therefore follows the majority of federal courts, including in this District, that find the regulatory requirements do not implicate the Court's subject matter jurisdiction.

The parties do not dispute that Plaintiff placed a sum certain value on the claim. Therefore, the only issue bearing on the Court's subject matter jurisdiction is whether Plaintiff's claim gave written notice sufficient to enable the VA to begin its own investigation.  The Government does not argue that Plaintiff failed to exhaust his wrongful death claim, therefore the Court proceeds to consider whether Plaintiff properly presented his survival claim.

**b.     Notice**

The Government argues that the administrative claim Plaintiff submitted to the VA cannot be fairly be read to assert a survival action.  The Court must consider the scope of claims Plaintiff asserted in his administrative charge in order to determine whether the agency was given sufficient notice to enable the VA to respond either by settlement or defense.[32]  Under Kansas law there are two different causes of action that may arise when a person's death is

---

[30]*Tucker*, 676 F.2d at 960.

[31]*See, e.g.*, *id.*; *GAF Corp.*, 818 F.2d at 919–20.

[32]*See Knapp*, 844 F.2d at 379 (considering Michigan state law that requires a wrongful death action to be brought by the personal representative of the estate).

allegedly caused by the negligence of another: a wrongful death action and a survival action.[33]  A wrongful death claim is based upon any loss suffered by all heirs after the decedent's death.[34]  A survival action allows the personal representative of the decedent's estate to recover damages accrued by the injured party between the time of injury and death, including pain and suffering experienced by the injured party between the time of injury and the time of death.[35]  Similarly, in Missouri, a wrongful death action belongs to the decedent's survivors and only the personal representative can bring a survivorship action.[36]

The Court finds that the administrative claim provided the VA with notice of a survival claim.  Both Missouri and Kansas law require a survival action to be brought by the personal representative of the estate.[37]  While Plaintiff's administrative claim does not clearly state a claim for recovery of "conscious pain and suffering" damages, it does demand "personal injury" damages.  Moreover, Plaintiff alleges in detail the depression and other mental health issues suffered by William Draughon prior to his death.  While it is true that neither Plaintiff's Complaint in this case, nor his administrative claim represented that Plaintiff was the personal representative of the estate, this is not fatal to the Court's subject matter jurisdiction.[38]  Failure to file a survival action by the person authorized under state law does not defeat subject matter

---

[33]*Marler v. Hiebert*, 960 F. Supp. 253, 254 (D. Kan. 1997).

[34]K.S.A. § 60-1902; *see also Marler*, 960 F. Supp. at 254.

[35]K.S.A. § 60-1801; *see also Mason v. Gerin Corp.*, 647 P.2d 1340, 1343 (Kan. 1982).

[36]*See Smith v. Tang*, 926 S.W.2d 716, 720 (Mo. Ct. App. 1996).

[37]*Mason*, 647 P.2d at 1343; Mo. Rev. Stat. § 537.020 (2014).

[38]*See Zywicki v. United States*, No. CIV.A. 88-1501-T, 1991 WL 128588, at *2 (D. Kan. June 20, 1991).

jurisdiction.[39]  Because the VA was given sufficient notice of this claim to enable it to begin its own investigation, the Court finds that Plaintiff exhausted his administrative remedies as to the survival claim.

> **3.      Claim for VA Benefits**

The Government argues that the Court lacks jurisdiction under 38 U.S.C. § 511(a) to the extent Plaintiff asserts a claim related to the Department of Veterans Affairs' disability determination of William Draughon.  Plaintiff is correct that this Court lacks subject matter jurisdiction over any benefits claim in this case because it has already been decided by the VA.[40] But the Court does not construe Plaintiff's Complaint as alleging a claim regarding any disability determination.  Instead, the Complaint seeks damages stemming from the negligent treatment of William Draughon's PTSD.  To the extent Plaintiff asserts a claim to disability benefits, his claim must be dismissed.

## III.     Failure to State a Claim

The Government next moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Government argues that Kansas law applies, and that under Kansas law, relief cannot be granted because Plaintiff is an improper party.  The Government also argues that if Missouri law applies, Plaintiff's claim must be dismissed because he could not represent the other heirs at law of William Draughon.  As described below, taking all inferences in favor of Plaintiff in reviewing the Complaint, Missouri law applies and Plaintiff may maintain a wrongful death action.  Moreover, under Missouri law,

---

[39]*Id.*; *see also Dawson ex rel. Estate of Dawson v. United States*, 333 F. Supp. 2d 488, 493 (D.S.C. 2004).

[40]*See* 38 U.S.C. § 511(a); *Jones v. United States*, 727 F.3d 844, 847–48 (8th Cir. 2013).

there is no requirement that all heirs at law join in a wrongful death lawsuit.  Therefore, the Court must deny the motion to dismiss subject to renewal on summary judgment.

### A.      Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[41]  Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[42]  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[43]  As the Supreme Court recently explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"[44]  Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]

---

[41]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[42]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[43]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247–48 (10th Cir. 2008).  "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[44]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[45]*Id.*

### B.      Choice of Law

Before the Court can determine whether Plaintiff has stated a claim under a particular state law, the Court must know which state law applies to his claims.  The Government argues that the Court should apply Kansas law because Plaintiff did not contest the Government's motion as to this issue and thus it is waived.  The Court disagrees.  The case cited by the Government on this point is inapposite; it merely states that where the "parties have not addressed the choice-of-law issue in the briefs before the court," the Court is not required to address the issue on its own and "the parties are deemed to have acquiesced in the application of the law of the forum."[46]  Here, the Government has raised the issue so the Court is required to address it.  Moreover, liberally construing Plaintiff's response, the Court views this motion as opposed.  As discussed later in this opinion, Plaintiff misunderstands the import of the choice of law question by seeking transfer to cure any deficiency caused by the application of Kansas law.  Nonetheless, the Court must address the choice of law question and declines to find it has been waived.

Here, the choice of Kansas or Missouri law will determine whether Plaintiff's wrongful death claim must be dismissed because under Kansas law, a wrongful death action can only be brought by an heir at law of the deceased.[47]  Plaintiff is not an heir at law under Kansas law because William Draughon left minor children and no spouse.[48]  Under Missouri law, on the

---

[46]*Controcom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666 (D. Kan. 1999).

[47]Kan. Stat. Ann. § 60-1902 (2014).

[48]An heir at law is the person "designated by statute who succeeds to the estate of a deceased person." *Johnson v. McArthur*, 596 P.2d 148, 152 (Kan. 1979).  When a deceased leaves children but no spouse, the children are the heirs at law.  Kan. Stat. Ann. § 59-506.  Here, William Draughon left children and no spouse.  Thus, the heirs at law are his children.

other hand, a wrongful death action can be brought by a parent of the deceased even when minor children survive with no spouse.[49]  Given this conflict, the Court must determine the choice of law.  The choice of law inquiry first requires the Court to determine which state's choice of law principles to apply.  Next, the Court must determine under that state's choice of law principles, which state's substantive law to apply to Plaintiff's claims.  Only then may the Court determine whether Plaintiff states a claim upon which relief may be granted under either Kansas or Missouri law.[50]

The United States can only be liable under the FTCA if it would be liable to the claimant under the state law where the act or omission occurred.[51]  The Supreme Court, interpreting this requirement, concluded that the "whole law" of the state where the act or omission occurred must be applied in the case, including choice-of-law principles.[52]  Liberally construing Plaintiff's Complaint, he alleges that the VA acted negligently when treating his son's PTSD, causing his son's suicide.  The Complaint alleges that the VA treated Plaintiff's son in Kansas, Missouri, and California.

"In cases involving acts or omissions in several states, the question is which acts count."[53]  As the Government rightfully points out, however, neither the FTCA nor Supreme

---

[49]Mo. Rev. Stat. § 537.080.1 (2014).

[50]Whether this case is decided in a federal court sitting in Kansas or Missouri has no bearing on whether Kansas or Missouri law applies. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (holding that a change of venue has no affect on the applicable state law and that change of venue is "but a change of courtrooms").

[51]28 U.S.C. § 1346(b)(1).

[52]*Richards v. United States*, 369 U.S.1, 11 (1962).

[53]*Sosa v. Alvarez-Machain*, 542 U.S. 692, 758–59 (2004) (Ginsburg, J., concurring in part and concurring in the judgment).  The Government misconstrues the *Controcom* court's statement that "the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred."  *Id.* at 667.  *Contracom* was a diversity case; the claims did not arise under the FTCA.

Court precedent answers this question.[54]  Courts have adopted at least five different approaches to determine which acts count in deciding which state's choice-of-law principles apply under § 1346(b):

> (1) applying different rules to different theories of liability; (2) choosing the place of the last allegedly-wrongful act or omission; (3) determining which asserted act of wrongdoing had the most significant effect on the injury; (4) choosing the state in which the United States' physical actions could have prevented injury; and (5) determining where the "relevant" act or omission occurred.[55]

The Tenth Circuit has not addressed the question, but the Third Circuit has concluded that the choice-of-law principles of the state "in which the last significant act or omission occurred" should apply.[56]

Choosing to adopt the "last significant act or omission" rule, the Third Circuit explained that "clarity is the most important virtue in crafting a rule by which [federal courts will] choose a jurisdiction."[57]  Not only does the "last significant act or omission" rule give clarity, it also "avoid[s] the selection of a jurisdiction based on a completely incidental 'last contact,' while also avoiding the conjecture that 'most significant act' inquiries often entail."[58]  Justice Ginsburg and Justice Breyer endorsed the Third Circuit's rule and reasoning in their concurring opinion in *Sosa v. Alvarez-Machain*.[59]  Given the lack of on-point controlling authority in this Circuit and

---

[54]*Id.* (quoting *Gould Electrs. Inc. v. United States*, 220 F.3d 169, 181 (3d Cir. 2000)).

[55]*Gould Electrs. Inc.*, 220 F.3d at 181.

[56]*Simon v. United States*, 341 F.3d 193, 204 (3d Cir. 2003).

[57]*Id.*

[58]*Id.*

[59]542 U.S. 692, 758–59 (2004) (Ginsburg, J., concurring in part and concurring in the judgment).

the persuasive reasoning of the Third Circuit and the concurring justices in *Sosa*, this Court will follow the "last significant act or omission" rule.

Although the Complaint alleges that Plaintiff was treated in California, assuming the facts alleged are true, the last significant act or omission could not have occurred in California because that conduct is the earliest in time.  California choice-of-law principles therefore do not apply.

As between Kansas and Missouri, the Complaint does not allege where the last significant act or omission by the Government occurred.  The Complaint alleges generally that the VA should have done more to treat William Draughon's health issues and prevent suicide. Beginning in 2005, Plaintiff alleges that William Draughon "did stints at the KC VA, Topeka and Leavenworth VA for treatment both long stays and short stays.  He saw doctors and counselors and went to support groups and took a lot of meds."[60]  The Complaint summarizes some of William Draughon's medical records and includes dates and brief descriptions of doctor's appointments and treatments.  While these notes state that William Draughon was treated extensively for mental health issues, they do not specify where each treatment occurred—at VA facilities in Kansas or Missouri.

The Government asks the Court to consider a Declaration from Mark I. Peterson, Chief of Staff of the VA in Eastern Kansas, discussing William Draughon's medical records.[61] Peterson states that the VA last treated William Draughon for mental health issues in Kansas, and that his last treatment in Missouri was with a primary care physician for physical issues

---

[60]Doc. 1 at 22.

[61]The Government did not submit the medical records; Peterson presents a summary and claims that the records themselves are voluminous.  Doc. 18, Ex. A.

unrelated to his mental health disorders.  But on a motion to dismiss under Fed. R. Civ. P.

12(b)(6), the Court does not consider matters outside the pleadings.[62]  Therefore, the Court must

disregard this evidence and consider the question solely on the basis of the pleadings.  Taking as

true the allegations in the Complaint, the last significant act or omission could have taken place

in Kansas or Missouri.

The Government argues that Kansas choice-of-law principles apply and require the Court

to apply the law of the place of the wrong.  Under Kansas choice-of-law principles, the Court

must consider the law of the place of the wrong except where the injury and the negligent

conduct occur in different states, in which case the place of injury controls.[63]  Under Missouri

choice-of-law principles, on the other hand, the law of the state with the "most significant

relationship" to the claim will apply.[64]  Under the Missouri test, the law that applies will depend

upon relevant contacts.[65]  Relevant contacts include the place of the injury and the place where

the conduct causing the injury occurred.[66]  The Complaint alleges that the place of death is

Missouri, and it alleges negligent conduct by the VA in both states.  At this stage, the Court must

view all inferences in favor of Plaintiff.  Given the allegations that the place of injury is Missouri

and that at least some of William Draughon's treatment occurred in Missouri, under either state's

---

[62]Fed. R. Civ. P. 12(d).

[63]Kansas courts have consistently applied the doctrine of *lex loci delicti* to determine choice of law in tort cases. *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985);  *Brown v. Kleen Kut Mfg. Co.*, 714 P.2d 942, 944 (Kan. 1986).  Under this rule, the law of the state where the tort occurred controls.  *Brown*, 714 P.2d at 944.  However, where the injury occurs in Kansas and the negligent act occurs in another state, the law of the place of injury controls because it is the last act necessary to complete the tort.  *Id.*; *Ling*, 703 P.3d at 735.

[64]*Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008) (internal quotations omitted).

[65]*Id.*

[66]*Nelson v. Hall*, 684 S.W.2d 350, 351–52 (Mo. Ct. App. 1984) (quoting Restatement (Second) of Conflicts of Laws § 145 (1971)).

choice of law principles, Missouri law should be applied.

### 3.      Failure to State a Claim under Kansas and Missouri Law

The Government suggests that Plaintiff cannot state a claim for which relief may be granted under either Kansas or Missouri law.  The Government argues that under Kansas law, Plaintiff's claim must be dismissed, again, because he is not a proper party to assert either wrongful death or survival claims.  The Court agrees that under Kansas law, Plaintiff's Complaint would be dismissed because he is not an heir at law, nor is he a personal representative of the estate.

Likewise, as discussed earlier in this opinion, only a personal representative may bring a survival claim under Missouri law.  As such, to the extent Plaintiff asserts a survival claim under Missouri law, that claim must be dismissed.  The Complaint fails to allege a claim on behalf of the estate, or allege that Plaintiff is the personal representative of the estate.  Therefore, regardless of whether Kansas or Missouri law applies, the survival claim must be dismissed.

The Government further argues that Plaintiff's wrongful death claim must be dismissed under Missouri law because as a *pro se* litigant, he may not file a wrongful death claim on behalf of William Draughon's minor children, and they are required parties under the Missouri wrongful death statute.   But the Government conflates the Missouri wrongful death statute and the rules applicable to *pro se* filings.  Under Missouri Revised Statutes section 537.080, a wrongful death action may be brought by the following classes of people:

> (1) By the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive;
> (2) If there be no persons in class (1) entitled to bring the action, then by the brother or sister of the deceased, or their descendants, who can establish his or her right to those damages set out in section 537.090

18

because of the death;

(3) If there be no persons in class (1) or (2) entitled to bring the action, then by a plaintiff ad litem. Such plaintiff ad litem shall be appointed by the court having jurisdiction over the action for damages provided in this section upon application of some person entitled to share in the proceeds of such action. Such plaintiff ad litem shall be some suitable person competent to prosecute such action and whose appointment is requested on behalf of those persons entitled to share in the proceeds of such action. Such court may, in its discretion, require that such plaintiff ad litem give bond for the faithful performance of his duties.

2. Only one action may be brought under this section against any one defendant for the death of any one person.[67]

While it is true that only one action may be brought against any one defendant for wrongful death, the statute does not require either that one party entitled to damages may bring that single action, or that all who are entitled must be parties to the suit.[68]  A plaintiff in a wrongful death action does not bring the action solely on his own behalf when there are other beneficiaries; damages must be apportioned among those entitled to them in proportion to the losses suffered whether they are made parties to the action or not.[69]

Under 28 U.S.C. § 1654, a federal court litigant has the right to act as his own counsel. However, the right to appear *pro se* only applies to the "appearance for one's self."[70]  A non-attorney administrator may not proceed *pro se* when there are other beneficiaries of the estate.[71] And a minor child cannot be represented by a next friend if that next friend is not represented by

---

[67]Mo. Rev. Stat. § 537.080.

[68]*See Denton v. Soonattrukal*, 149 S.W.3d 517, 524 (Mo. Ct. App. 2004) (quoting *Schiles v. Gaertner*, 659 S.W.2d 791, 793 (Mo. Ct. App. 1983)).

[69]*O'Neal v. Pipes Enters., Inc.*, 930 S.W.2d 416, 422 (Mo. Ct. App. 1995); Mo. Rev. Stat. § 537.095.1.

[70]*Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997).

[71]*Jones ex rel,. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 951–52 (8th Cir. 2005); *Pridgen*, 113 F.3d at 393.

an attorney.[72]  Nonetheless, the Court cannot find that under Missouri law William Draughon's children are necessary parties.  As already discussed, Plaintiff does not bring this action as the personal representative of the estate; the only surviving claim is a wrongful death action in his personal capacity as an heir of William Draughon.  While Plaintiff is within the same class of beneficiaries as the minor children entitled to bring a wrongful death action, Missouri law does not require all beneficiaries to be joined in a single action as Plaintiffs.  Therefore, Plaintiff's inability to represent the minor beneficiaries in this action under Missouri law is not fatal to his claim.

In sum, while the Court grants the Government's motion to dismiss Plaintiff's survival claim, it must deny the Government's motion to dismiss Plaintiff's wrongful death claim for failure to state a claim upon which relief may be granted.  The issue of whether Plaintiff is a proper party to litigate a wrongful death claim under state law does not implicate the Court's subject matter jurisdiction.  Therefore, given that this motion is presented under Fed. R. Civ. P. 12(b)(6), the Court is confined by the allegations in the Complaint to determine choice of law and may not look to matters outside the Complaint.  Assuming the facts alleged are true, and viewing those facts in the light most favorable to Plaintiff, the Court must apply Missouri law.  Under either Kansas or Missouri law, Plaintiff's survival claim must be dismissed.  The only basis raised by the Government for dismissal of the wrongful death claim under Missouri law is Plaintiff's inability to represent the minor heirs of William Draughon.  Because this argument is not fatal to Plaintiff's claim, the Court must deny the Government's motion to dismiss without

---

[72]*Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curium).  There are certain limited exceptions to this rule.  For example, a non-attorney parent may proceed *pro se* in order to challenge the denial of SSI benefits.  *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1300 (10th Cir. 2011).  There is no such exception for lawsuits based on general tort claims.  *See Elustra v. Mineo*, 595 F.3d 699, 705 (7th Cir. 2011).

prejudice to renewal on summary judgment.  At that time, the parties may argue the appropriate choice of law by reference to matters outside the pleadings.

## IV.    Motion to Transfer

The Government asks the Court to transfer this case to the Western District of Missouri in the event it denies the motion to dismiss and finds that Missouri law applies. Plaintiff too asks for transfer in the event the Court determines that dismissal is proper, presumably in the belief that transfer will cure any choice of law deficiency.  Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness.[73]  In determining whether transfer is appropriate under Section 1404(a), the Court should consider the plaintiff's choice of forum, the accessibility of witnesses and other sources of proof, the cost of making the necessary proof, questions as to the enforceability of a judgment if one is obtained and relative advantages and obstacles to a fair trial, difficulties that may arise from congested dockets, the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law, and "all other considerations of a practical nature that make a trial easy, expeditious and economical."[74]

The Government correctly notes that this case could have been brought in the Western

---

[73]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

[74]*Chrysler Credit Corp.*, 928 F.2d at 1515–16 (citing *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1957)).

District of Missouri.[75]  But the applicable factors weigh against transfer.  The Court weighs

heavily Plaintiff's choice of Kansas as the forum, and finds no evidence that witness

convenience or the cost of making necessary proof will be better served by transfer.  To be sure,

the close proximity of this Court to the court in Missouri makes any claim of witness

convenience suspect. The sole basis for  Defendant's transfer request appears to be that the

federal court in Missouri is better versed in Missouri law.  But the Court gives this factor little

weight because the legal issues in this case under Missouri law appear to be uncomplicated and

the Court is qualified to apply relevant state law.[76]  For these reasons, the Court denies the

Government's alternative motion to transfer this matter to the Western District of Missouri for

disposition.

## V.      Appointment of Counsel

An indigent litigant has no constitutional right to an attorney in civil cases.[77]

Nonetheless, the Court may appoint an attorney to represent a person unable to afford counsel.[78]

Because Plaintiff's motion to proceed *in forma pauperis* was granted, he is within the class of

plaintiffs to whom 28 U.S.C. § 1915(e)(1) applies.  In order to determine whether to appoint

counsel, the Court should consider "'the merits of the litigant's claims, the nature of the factual

issues raised in the claims, the litigant's ability to present his claims, and the complexity of the

---

[75]28 U.S.C. § 1346(b)(1).

[76]*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).

[77]*Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006).

[78]28 U.S.C. § 1915(e)(1).

legal issues raised by the claims.'"[79] As described above, the Court finds that Plaintiff has stated a plausible claim of wrongful death under Missouri law.  While the substantive claim under Missouri law is not complicated, the choice of law inquiry that is likely to precede any review of Plaintiff's wrongful death claim is legally complex.   The Court's review of the record reveals that Plaintiff may not be capable of addressing the difficult choice of law issues raised by the facts of this case, nor is he able to represent *pro se* his minor grandchildren who must otherwise be dismissed.  Moreover, the Peterson Declaration makes clear that the medical records in this case are voluminous, and given their import in both the choice of law and merits determinations in this case, the Court finds that counsel is warranted to assist Plaintiff in responding to any forthcoming dispositive motions.  The Court will therefore appoint counsel to represent Plaintiff going forward, and will thus deny the motion to dismiss Plaintiff's minor grandchildren based on his *pro se* status.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss Or, In The Alternative, For Transfer of Venue (Doc. 15) is **granted in part and denied in part**.  The case is dismissed without prejudice as to Defendants Department of Veterans Affairs, Office of Attorney General, and United States Attorney.  Plaintiff's survival claim is dismissed with prejudice.  The motion is otherwise denied.

**IT IS FURTHER ORDERED** that counsel shall be appointed to represent Plaintiff Donald Draughon.

**IT IS SO ORDERED.**

Dated: May 1, 2015

---

[79]*Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)).

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE